**John Alfred ADDERLY et al., Petitioners,**

v.

**Louie L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Respondent.**

**No. 67–298–Civ–J.**

United States District Court,
M. D. Florida,
Jacksonville Division.

Nov. 13, 1972.
Motion Denied Nov. 28, 1972.

See also D.C., 46 F.R.D. 97.

Anthony Amsterdam, Stanford University School of Law, Stanford, Cal., Jack Himmelstein, N.A.A.C.P. Legal Defense Fund, New York City, Richard J. Wilson, Gainesville, Fla., Tobias Simon, A.C.L.U. of Florida, Inc., Miami, Fla., James M. Russ, Orlando, Fla., for plaintiffs.

Robert L. Shevin, Atty. Gen., George R. Georgieff, Asst. Atty. Gen., Tallahassee, Fla., for defendant.

## ORDER

CHARLES R. SCOTT, District Judge.

In this case six named plaintiffs, then men sentenced to death under the applicable provisions of Florida law, caused to be filed on April 3, 1967, through their attorneys, a petition for writ of habeas corpus and other appropriate relief pursuant, explicitly, to 28 U.S.C. § 2241(c)(3) and, implicitly, to 28 U.S.C. § 2254. The petition was jointly executed by the named petitioners who each caused his signature to be affixed to the petition. The petitioners therein alleged their poverty and prayed the Court to allow them to proceed in forma pauperis. The petitioners properly named as respondent Louie L. Wainwright, who was, and is, the Director of the Florida Division of Corrections.

The petitioners alleged that they were each restrained of their liberty, in that they were confined and detained by the respondent and that they were each subject to a sentence of death. The petitioners further alleged exhaustion of state judicial remedies as required by 28 U.S.C. § 2254(b).

Each petitioner alleged that he had been deprived of his liberty, in that each had been denied the due process of law and the equal protection of the law. More importantly, under the facts of the case as they then existed and with a view to the subsequent determination of the Supreme Court of the United States in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), petitioners alleged that the imposition of the penalty of death was in violation of the Eighth and Fourteenth Amendments of the United States Constitution. In support of this allegation petitioners asserted that, first, since the percentage of persons who are sentenced to death is much higher among those who plead not guilty than among those who plead guilty, there is a chilling effect in a capital case upon a defendant's right to a jury trial and that, second, since no juror could be chosen from that vast majority of persons otherwise qualified to serve who oppose capital punishment on moral, religious and ethical grounds, there is a chilling effect in a capital case upon a defendant's right to a jury trial, and that there is, consequently, a constitutionally impermissible death orientation of each jury in each capital case.

Additionally, the petitioners sought to bring the petition as a class action in ac-

cordance with and pursuant to Rule 23 of the Federal Rules of Civil Procedure; accordingly, petitioners properly advanced the requisite allegations. The class was therein implicitly defined to be those persons in the custody of the respondent who were then subject to a sentence of death. Finally, petitioners prayed *inter alia* for a stay of execution.

Subsequent to the filing of the above-described petition, Judge William A. McRae, Jr., entered an order on April 13, 1967, which provided in part for petitioners to proceed *in forma pauperis*, for a response to be filed by respondent and for the stay of execution of the sentences of death to which petitioners and others of their alleged class were then subject. The Court also noted that a fundamental distinction between counts I and II of the petition was that the former was essentially a joint petition for habeas corpus relief, whereas the latter sought to bring the allegations to the Court in the posture of a class action.

Later, on July 31, 1967, Judge McRae amended the previous order. The effect of this amendment was to include also within the class of those persons whose executions had been stayed any persons thereafter subjected to a sentence of death.

Before urging that the Court rule on the propriety of a joint or class action, counsel for the petitioners suggested to the Court the apparent necessity that the Court allow, in order to establish a factual basis for the determination of whether a joint or class action should be entertained, the interviewing of all inmates of "death row" in order to determine the existence, nature and status of pending legal proceedings involving each and the posture of each with regard to representation by counsel. These inquiries would then constitute the factual basis for a judicial decision as to whether, under Rule 23(b)(3) of the Federal

Rules of Civil Procedure, ". . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy". Persuaded by this logic and in consideration of Rule 23(c)(1) of the Federal Rules of Civil Procedure, the Court thereupon on August 9, 1967, entered an order which provided and concluded in part that

Upon careful consideration of the Petition, briefs and arguments herein, the Court concludes:

(a) The Court cannot now say that a joint or class action for a writ of habeas corpus could never, under any circumstances, be entertained.

(b) The factual record before this Court at this time is inadequate to support a considered decision as to whether the present case is or is not one in which a joint or class action may properly be entertained.

(c) Respondent's motion to dismiss is therefore denied, without prejudice to its renewal at the conclusion of the further proceedings directed by this order.

(d) Enquiry into the status of legal proceedings affecting each of the inmates of death row, and into the status of legal representation of each, suggested by counsel for Petitioners, is a necessary condition of determination by this Court of the propriety of a joint or class action herein.

(e) In view of the uncontested allegations and assertions of Petitioners that the inmates of death row are impoverished, unrepresented, ignorant and illiterate, a necessary first step in any such enquiry is the personal interviewing of each inmate by an attorney properly concerned with the inmate's interests.

(f) In view of the additional uncontested assertions of Petitioners that death-row inmates frequently do not

know or understand the status of their proceedings or their legal representation, and that lawyers who have been representing them may cease to represent them without their knowledge, a further necessary step in any such enquiry is an independent check of the information furnished by death-row inmates, including inspection of the legal records of their proceedings and interviews of the attorneys whom the inmates name as representing or as having represented them.

(g) Counsel for Petitioners have informed the Court that they are willing to advance the funds required to conduct the enquiries described in the preceding two sub-paragraphs, and are willing to provide attorneys to conduct those enquiries, under the supervision of counsel for Petitioners.

. . . . . .

Therefore, in consideration of the foregoing, it is

ORDERED:

1. Respondent's Motion to Dismiss is denied, without prejudice to its renewal at the conclusion of the further proceedings directed by this Order.

2. Respondent shall permit counsel for Petitioners, or any attorneys designated by them and under their supervision, to interview each person now subject to execution of sentence of death, or who may hereafter become subject to execution of sentence of death during the period prior to the final disposition of this action. These interviews shall be allowed in private quarters, without the presence of guards or other officials, and under conditions which permit the intimacy and privacy of the ordinary lawyer-client relationship, proper consideration being given to such reasonable security measures as may be imposed by

Respondent. Prisoners shall be brought singly to such private quarters for interviewing, at times arranged to suit the reasonable convenience of Respondent and counsel for Petitioners. The interviewers shall be attorneys admitted to The Florida Bar.

3. Counsel for Petitioners, personally or by attorneys designated by them and under their supervision, shall conduct interviews of all persons described in the preceding subparagraph. These interviews shall be conducted with all practicable speed, in view of the facilities available to counsel for Petitioners, and of the convenience of Respondent. Thereafter, counsel for Petitioners, personally or by attorneys designated by them and under their supervision, shall conduct an independent check of the status of legal proceedings against each person described in the preceding subparagraph, and the status of his legal representation, by inspection of court records, interviews with attorneys who are representing or have represented each such person, and such other investigation as appears necessary reliably to determine the status of legal proceedings and of legal representation of each such person.

4. Counsel for Petitioners shall not interview any person now known to be represented by counsel without prior permission of his attorney. Respondent shall furnish to counsel for Petitioners, by August 31, 1967, a list of all persons then subject to execution of the sentence of death in the State of Florida, with the name of counsel for each, if any. Thereafter, until the date of filing by Petitioners of the memorandum described in the next paragraph, Respondent shall furnish to counsel for Petitioners the name of any additional person who becomes subject to execution of the sentence of death, with the name of his counsel, if

any. The name of each such additional person shall be furnished by Respondent to counsel for Petitioners within ten days of the date when it becomes known to Respondent that such person is subject to execution.

5. As soon as practicable after the conclusion of the interviews and investigations described above, counsel for Petitioners shall file with the Court their memorandum (1) describing the findings of their interviews and investigations, and (2) stating and arguing their position on the questions of whether this action should thereafter be entertained by this Court as a joint or class action, and (3) proposing their plan for the implementation of the action in its joint or class form, with due regard to the formation of subclasses, to the adequate representation of the class and any subclasses, and to the problem of notice to all members of the class and subclasses.

6. Within thirty days after the filing of the memorandum by counsel for Petitioners, Respondent shall file an answering memorandum. Respondent's memorandum shall identify with particularity all factual assertions in Petitioners' memorandum that Respondent wishes to contest, and shall state and argue Respondent's position on the procedural questions involved.

Adderly v. Wainwright, 272 F.Supp. 530 (M.D.Fla.1967).

Subsequent to the filing by counsel for the petitioners of a rather detailed and extensive report pursuant to the abovementioned Court order, a hearing was held on the propriety of a joint or class action and on a motion to dismiss filed by respondent. Thereafter, on November 29, 1968, Judge William A. McRae, Jr., by Court order[1] allowed petitioners to proceed as a class in accordance with Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Court reasoned and determined that all prerequisites to a class action, as set out and required by Rule 23(a), had been satisfied. The Court then reasoned that this case was otherwise maintainable under Rule 23. The case of Hill v. Nelson, 272 F.Supp. 790 (N.D.Cal.1967) was construed not to be a doctrinaire rejection of the civil rules in habeas corpus, and Seals v. Wiman, 304 F.2d 53 (5th Cir. 1962), was cited as indicating that the Fifth Circuit has indicated that there is no doctrinal objection to the applicability of the civil rules in habeas corpus.

On May 18, 1971, this case was reassigned and transferred to the undersigned. Thereafter, the Supreme Court of the United States ruled on June 29, 1972, in the case of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) and other related cases. On July 17, 1972, this Court entered an order which set this case for a hearing on July 28, 1972, and directed the respondent to show cause why the relief prayed for should not be granted. Notice of these proceedings was provided to all members of the class by posting by United States Mail a copy of the order to all those persons who were at that time under a sentence of death. Additionally, a supplemental order was entered by this Court which directed the respondent to provide the Court, on or before the date of the hearing, with a list of all those persons subject to a sentence of death in Florida as of the date of the hearing. Pursuant to these orders the respondent filed a response and a list of all those persons subject to a sentence of death. Thereafter, counsel for petitioners filed a memorandum.

At the hearing counsel for respondent indicated to the Court that there were then pending in the Supreme Court of Florida proceedings involving 39 persons subject to a sentence of death. Counsel for respondent argued that, on the basis

1. Adderly v. Wainwright, 46 F.R.D. 97 (M.D.Fla.1968).

---

(Writing.)

**395**

of comity, relief to those 39 persons should not be granted.

This Court then entered a "blanket" order[2] on August 1, 1972, which pro-

2. That order provides:

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA, ex rel., WILLIE YOUNG, CALVIN THOMAS and HAROLD SIMON, Petitioners,
v.
L. L. WAINWRIGHT, Director, Division of Corrections, State of Florida, et al., Respondents.
NO. 64–16–Civ–J–S

STATE OF FLORIDA, ex rel., JAMES MATTHEW LAND, Petitioner,
v.
LOUIE L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Respondent.
NO. 65–36–Civ–J–S

WILLIE PORTER, Petitioner,
v.
LOUIE L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Respondent.
NO. 65–258–Civ–J–S

WILLIAM BENJAMIN CRAIG, Petitioner,
v.
LOUIE L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Respondent.
NO. 66–595–Civ–J–S

JOHN ALFRED ADDERLY, JOHN HENRY ROBERTS, JOSEPH MONTGOMERY, JAMES E. COLLINS, THOMAS ALLEN, HENRY J. CARSWELL and all other persons similarly situated, Petitioners,
v.
LOUIE L. WAINWRIGHT, Director, Florida Division of Corrections, Respondent.
NO. 67–298–Civ–J–S

RAYMOND ALEXANDER SCHNEIDER, Petitioner,
v.
L. L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Respondent.
NO. 68–277–Civ–J–S

ORDER

Pursuant to this Court's order of July 17, 1972, a hearing was held on July 28, 1972, to allow the respondent Louie L. Wainwright, Director, Florida Division of Corrections, to show cause why the relief petitioners seek, for themselves and for those of their class, should not be granted. That order limited the issues to those relating solely to whether the sentences of death should be vacated and set aside.

On Monday, November 29, 1968, an order was entered in the above styled case of Adderly, et al. v. Wainwright, 46 F. R.D. 97 Case No. 67–298–Civ–J, which ordered and provided that the petitioners proceed as a class in accordance with Rule 23 of the Federal Rules of Civil Procedure. That order provided that the class was inclusive of all those persons who were then subject to a sentence of death and all those persons who might later be sentenced to death.

This Court has carefully considered the opinions of the Supreme Court of the United States in the cases of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and Stewart v. Massachusetts, 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed.2d 744 (1972). This Court has further carefully considered the arguments of counsel and the Court files.

Therefore, it is

ORDERED:

1. All those persons presently committed to the custody of the respondent and subject to a sentence of death are properly within the class of those persons who are petitioners in the case of Adderly,

et al. v. Wainwright, 46 F.R.D. 97, No. 67–298–Civ–J, and respondent's oral motion at the hearing held July 28, 1972, to dissolve and dismiss the class action is hereby denied.

2. The imposition and carrying out of the sentences of death on all those persons presently subject to a sentence of death constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); Stewart v. Massachusetts, 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed.2d 744 (1972).

3. The petitions for writs of habeas corpus, filed herein January 23, 1964, in United States of America, ex rel., Willie Young; Calvin Thomas and Harold Simon v. L. L. Wainwright, Case No. 64–16–Civ–J; filed herein February 6, 1965, in State of Florida, ex rel., James Matthew Land v. Louie L. Wainwright, Case No. 65–36–Civ–J; filed herein July 12, 1965, in Willie Porter v. Louie L. Wainwright, Case No. 65–258–Civ–J; filed herein August 3, 1966, in William Benjamin Craig v. Louie L. Wainwright, Case No. 66–595–Civ–J; filed herein April 3, 1967, in John Alfred Adderly, John Henry Roberts, Joseph Montgomery, James E. Collins, Thomas Allen, Henry J. Carswell and all other persons similarly situated v. Louie L. Wainwright, Case No. 67–298–Civ–J; filed herein July 23, 1968, in Raymond Alexander Schneider v. L. L. Wainwright, Case No. 68–277–Civ–J, are HEREBY GRANTED to the limited extent that only the sentences of death are vacated and set aside.

4. The sentences of death imposed against:

| NAME | COUNTY | OFFENSE |
| --- | --- | --- |
| ADDERLY, John A. | Broward | Murder |
| ALLEN, Thomas | Columbia | Murder |
| ANDERSON, Alvin Eugene | Marion | Rape |
| ASHLEY, Henry Thomas | Pasco | Murder |
| BAKER, Bernard R. | Indian River | Murder |
| BAKER, Rudolph | Lee | Murder |
| ARRINGTON, Marie Dean | Hernando | Murder |
| BAXTER, John Alvin | Broward | Murder |
| BOYKIN, Willie James | Duval | Murder |
| BROWN, Bill, Jr. | Leon | Murder |
| BRYANT, Bobby | Dade | Murder |
| CAMPBELL, Calvin Carlos | Union | Murder |
| CARSWELL, Henry J. | Palm Beach | Murder |
| CHATMAN, James S. | Lake | Murder |
| CIRACK, Charles Alexander | Volusia | Murder |
| CLOWERS, Joe Nathan | Dade | Murder |
| COLLINS, James E. | Duval | Rape |
| CRAIG, William Benjamin | Leon | Rape |
| DALTON, Charles O., Jr. | Indian River | Murder |
| DRUMWRIGHT, Jimmie Lee | Seminole | Rape |
| FIELDS, Bobby | Marion | Rape |
| GILLEY, Israel | Seminole | Rape |
| GRANT, Daniel | Dade | Murder |
| GRIMES, Nathaniel, Jr. | Leon | Murder |
| HARDIE, Jackie | St. Johns | Murder |
| HAWKINS, Charles C. | Marion | Murder |
| HENNINGER, John | Dade | Murder |
| HOLSTON, Leon C. | Broward | Murder |
| JOHNSON, Cleveland Lee | Pinellas | Murder |
| LAND, James Matthew | Duval | Murder |
| LEE, Wilbert | Jackson | Murder |
| McCLENDON, Eddie Thomas | Palm Beach | Rape |
| NEWMAN, Richard Carter | Palm Beach | Rape |
| PARAMORE, Emmett J. | Dade | Murder |
| PASCHAL, Albert | Duval | Murder |
| PERKINS, Cecil | Gadsden | Rape |
| PITTS, Freddie Lee | Jackson | Murder |
| PLEAS, Wallace (n) | Leon | Murder |

| NAME | COUNTY | OFFENSE |
|---|---|---|
| PORTEE, Larry | Dade | Rape |
| PORTER, Willie | Martin | Murder |
| RICHARDSON, James Joseph | Lee | Murder |
| RILEY, John | Escambia | Murder |
| RIVERS, Willie | Alachua | Murder |
| ROBERTS, John Henry | Broward | Murder |
| SCHNEBLE, Donald Felix | Walton | Murder |
| SCHNEIDER, Raymond A. | Palm Beach | Murder |
| SIMMONS, Joseph Nathaniel | Pinellas | Rape |
| SIMON, Harold | Duval | Murder |
| THOMAS, Calvin W. | Duval | Murder |
| THOMAS, Ellis, Jr. | Highlands | Rape |
| THOMAS, John D. | Leon | Murder |
| THOMPSON, Albert Bone | Polk | Rape |
| VAN EATON, Richard | Pinellas | Murder |
| WASLEY, Richard Lee | Pinellas | Murder |
| WHITNEY, Dennis M. | Dade | Murder |
| WILLIAMS, Edward | Martin | Murder |
| WILLIAMS, John G. | Pinellas | Rape |
| WILSON, Fulton Lewis T. | Alachua | Murder |
| WILSON, Willie Pinkney | Alachua | Murder |
| YOUNG, Willie | Duval | Murder |

ARE HEREBY VACATED AND SET ASIDE, Except for any such sentences of death which have previously been vacated and set aside.

5. Any sentences of death previously entered against any person *not* named in paragraph four or *not* named in paragraph six ARE HEREBY VACATED AND SET ASIDE, except for any such sentences of death which have been previously vacated and set aside.

6. Jurisdiction is retained, pending a decision of the Supreme Court of Florida vacating and setting aside the sentences of death against the hereinafter listed persons, in the case of Adderly, et al. v. Wainwright, Case No. 67–298–Civ–J, over the following named inmates who are subject to a sentence of death and who are within the class of petitioners in the above styled case:

ANDERSON, Earnest Eugene
BARLOW, David Edward
BAULDREE, John Phillip
BERNOVICH, Dennis
BISHOP, Sylvian Dale
BLACKWELL, Thomas Henry
BOATWRIGHT, Kenneth L.
BYRD, Robert Lee
CHANEY, Cornelius Lewis
COBB, Charles Elwood
COON, Douglas Dwight
CORRIEA, Raymond Robert
DEMPS, Bennie Eddie
EVANS, Lawrence Dean
FORWARD, James E.
FOWLER, Jerry Dwayne
FUSSELL, James
GUICE, Marvin Louis
GORHAM, Douglas
HALL, Roger L.
HARKELROAD, James Wesley
HIGGS, Macon, Jr.
HORTON, Leslie D.
HOUSE, Anthony Wayne
HOUSE, Herbert Eugene, Jr.
JOHNSON, Richard M., Jr.
JONES, Wayne
KEATON, Dave Roby
McDOLE, James Steddo
PAULK, Roy Carroll
PRESSLEY, Nathaniel
PYE, Benjamin Franklin
REED, Craig V.
REED, Gene R.
RESNICK, Errol
ROSEMAN, Andrew James
VAILLANCOURT, Paul Arthur
WARREN, Robert
WARRICK, Samuel Wade

7. This order does not affect the adjudication of guilt of petitioners.

8. The cases of the petitioners hereinabove listed in paragraph four are, by individual and separate orders entered in the case of Adderly, et al. v. Wainwright, Case No. 67–298–Civ–J, hereby remanded

vided, *inter alia*, that all persons then subject to a sentence of death were properly within the Rule 23 class; that, in accordance with the Supreme Court's ruling in Furman v. Georgia and related cases, the imposition and carrying out of the sentence of death on those persons constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution; that the petitions for writ of habeas corpus in this case and in five other specified cases wherein the petitioners were persons subject to sentences of death were granted to the limited extent that only the sentences of death were vacated and set aside; that the sentences of

death imposed against 60 named persons were vacated and set aside; that any sentence of death previously imposed against any person not by name listed in the instant order was vacated and set aside; that the Court retained jurisdiction in the case over 39 named persons who were subject to a sentence of death who had cases pending in the Supreme Court of Florida; that the instant order did not affect the adjudication of guilt of petitioners; that the cases of the 60 named persons whose sentences of death had been vacated and set aside were remanded by separate and individual orders[3] to the appropriate and respective circuit courts for resentencing; that the

as of August 1, 1972, to the appropriate and respective circuit courts for resentencing.

9. The issues raised by petitioners, which relate to their respective adjudications of guilt, in Young, et al. v. Wainwright, Case No. 64–16–Civ–J, Land v. Wainwright, Case No. 65–36–Civ–J, and Porter v. Wainwright, Case No. 65–258–Civ–J, will subsequently be set down for evidentiary hearings.

10. The United States Marshal for the Middle District of Florida, or his authorized representative, is hereby directed to serve personally a certified copy of this order upon the respondent Louie L. Wainwright, Director, Florida Division of Corrections, at Tallahassee, Florida; R. D. Massey, Superintendent, Florida State Prison, at Starke, Florida, and each of those inmates listed hereinabove in paragraph four at the Florida State Prison, Starke, Florida.

11. This Court retains jurisdiction of the case of Adderly, et al. v. Wainwright,

Case No. 67–298–Civ–J, and the other above styled cases.

DONE AND ORDERED at Jacksonville, Florida, this 1st day of August, 1972.

(s) CHARLES R. SCOTT
Judge

3. Each of the 60 individual and separate orders were entered and executed concurrently with the joint and blanket order which is set out in footnote 2, *supra*. Each such separate order was identical with the others save the name of the inmate, the sentencing Circuit Court of the State of Florida, the style of the criminal case in each such Circuit Court in which each such person had theretofore been sentenced, and the name of the Clerk of each such Circuit Court. Copies of each such separate order were posted by United States Mail to the inmate, the Attorney General of the State of Florida, and the Clerk of the appropriate Circuit Court. Additionally, a certified copy of the blanket order was attached to each such separate order.

One of the separate orders for example, provides:

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHN ALFRED ADDERLY, et al., Petitioners,

v. NO.

LOUIE L. WAINWRIGHT, Director, Florida Division of 67–298–Civ–J–S
Corrections, Respondent.

ORDER

The sentence of death previously imposed on DONALD FELIX SCHNEBLE

in the Circuit Court of Walton County, Florida, for the crime of murder has been vacated and set aside by this Court's

United States Marshal for the Middle District of Florida, or his authorized representative, was directed to perfect personal service of process on each of the 60 persons whose sentences of death had thereby been vacated and set aside; and that the Court retained jurisdiction over the case. Each of the other 39 named persons were noticed of the Court's order by posting a copy of the "blanket" order to each such person by United States Mail.

Thereafter, the Supreme Court of Florida, on September 8, 1972, in Anderson v. State, 267 So.2d 8 (1972), and related cases, vacated and set aside the sentences of death then imposed and in force against all remaining persons subject thereto.[4]

order dated August 1st, 1972, a certified copy of which is attached hereto.
Therefore, it is
ORDERED:
That the case of State of Florida v. Schneble is hereby remanded to the Circuit Court of Walton County, Florida, for resentencing.
DONE AND ORDERED at Jacksonville, Florida, this 1st day of August, 1972.

(s) CHARLES R. SCOTT
Judge

Copies to:
Mr. Donald Felix Schneble, #015789
Post Office Box 221
Raiford, Florida, 32083
Mr. Philip A. Anderson, Clerk
Walton County Circuit Court
Walton County Court House
DeFuniak Springs, Florida
Honorable Robert L. Shevin
Attorney General
The Capitol
Tallahassee, Florida, 32304

4. Thereafter, on September 26, 1972, the Supreme Court of Florida in In re Baker, 267 So.2d 331 (1972), a case of original jurisdiction, proceeded "in the best interest of the public" to impose life sentences as of that date on all persons who had been previously subject to a sentence of death and who had not theretofore been resentenced by the appropriate Circuit Court. Counsel for petitioner Baker, Tobias Simon, Esquire, of Miami, Florida, who is also one of counsel for petitioners in the instant case, apparently argued to the Supreme Court of Florida the pressing urgency of such a ruling in consideration of the then imminent operation of Pub.L. ch. 72–118 (1972). That statute, which the Legislature of the State of Florida had enacted in its wisdom, was to become effective and operable October 1, 1972, and provides:
CRIMES—PUNISHMENTS—
DEATH PENALTY
CHAPTER 72–118
SENATE BILL NO. 153

An Act relating to criminal penalties; amending section 775.082, Florida Statutes, creating new subsections (2) and (3) of section 775.082, Florida Statutes, providing that if the courts declare the death penalty unconstitutional, then those persons to be sentenced or those previously sentenced to death shall be sentenced to life imprisonment; renumbering subsections (2), (3), and (4) of section 775.082, Florida Statutes; providing an effective date.
BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF FLORIDA:
Section 1. Section 775.082, Florida Statutes, is amended by creating two new subsections (2) and (3) to read:
775.082 Penalties for felonies and misdemeanors
(2) In the event the death penalty in a capital felony is held to be unconstitutional by the Florida Supreme Court or the United States Supreme Court, a person who has been convicted of a capital felony shall be punished by life imprisonment.
(3) In the event the death penalty in a capital felony is held to be unconstitutional by the Florida Supreme Court or the United States Supreme Court, the court having jurisdiction over a person previously sentenced to death for a capital felony shall cause such person to be brought before the court, and the court shall sentence such person to life imprisonment with no eligibility for parole.
Section 2. Subsections (2), (3), and (4) of section 775.082, Florida Statutes, are renumbered accordingly.
Section 3. This act shall take effect October 1, 1972.
Became a law without the Governor's approval.
Filed in Office Secretary of State March 30, 1972.
Although this Court had declined at the July 28, 1972, hearing to rule on that statute, since its operation was at that time merely prospective and in view of

It, therefore, now appears that all the issues properly raised in this case are moot as a result of, either, the relief granted by this Court in this case on August 1, 1972, or the relief granted by the Supreme Court of Florida in Anderson v. State, *supra*, on September 8, 1972.

### RULE 23 and HABEAS CORPUS

■ The fundamental procedural question which has been before this Court in this case is whether a petition for a writ of habeas corpus can be brought as a class action. This Court has properly held, consistent with the fundamental requirements of justice, that it is appropriate, proper and lawful for such a case to proceed as a class action.[5] Indeed, this case demonstrates the point that justice may best be obtained by the utilization of such a procedural device and impliedly asserts that, absent such a device, a dogmatic rejection would have lent credence to the petitioners' position that '[t]hey will be heard together or they will be electrocuted individually". Brief for petitioners at 30 (petitioners' memorandum of law on questions of joinder, class, action and related procedural questions, filed herein May 1, 1967).

The Supreme Court of the United States has not yet decided the question of the applicability to habeas corpus of the class action rule. Harris v. Nelson, 394 U.S. 286, 294 n. 5, 89 S.Ct. 1082, 22 L. Ed.2d 281 (1969). Further, the issue has been only rarely presented in recorded cases. *See, e. g.*, Adderly v. Wainwright, 272 F.Supp. 530 (M.D.Fla.1967) (instant case); Mitchell v. Schoonfield, 285 F.Supp. 728 (D.Md.1968) (issue not decided); Hill v. Nelson, 272 F.Supp. 790 (N.D.Cal.1968) (issue not decided).

the provisions of 28 U.S.C. § 2281 et seq., counsel for petitioners had alleged the statute to be in violation of the Constitution of the United States, in that it was a bill of attainder, an *ex post facto* law and that it was violative of the equal protection clause of the Fourteenth Amendment.

## I. THE STATUTORY FRAMEWORK

### a. 28 U.S.C. § 2243

28 U.S.C. § 2243 provides in part that [t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require.

This Court concludes that under the preceding statutory provision Rule 23 of the Federal Rules of Civil Procedure may be applied by analogy to a petition for writ of habeas corpus.

The writ of habeas corpus was received into our law in the colonial period and thereafter was incorporated by the Framers, expressly, into the Constitutional scheme: "The Privilege of the Writ of Habeas Corpus shall not be suspended. . . ." U.S.Const. art. 1, § 9. Thereafter, habeas corpus was conferred to the federal courts in the first grant by Congress of jurisdiction. Act of September 24, 1789, c. 20, § 14, 1 Stat. 81.

■ Habeas corpus has through its grand history played a critical role in the protection of human freedom and has been utilized by the judiciary as its fundamental instrument for "lifting undue restraints upon personal liberty". Price v. Johnston, 334 U.S. 266, 269, 68 S.Ct. 1049, 1052, 92 L.Ed. 1356 (1948), and "safeguarding individual freedom against arbitrary and lawless state action". Harris v. Nelson, 394 U.S. 286, 290–291, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969). Consequently, it was early confirmed by Chief Justice Marshall to be a "great constitutional privilege". Ex parte Bollman, 8 U.S. (4 Cranch) 75, 95 (1807).

In consideration of the "fundamental importance" of the writ, Johnson v. Av-

5. Generally, and absent a showing of abuse, the trial court's decision as to whether a proper class action has been brought is final. Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5th Cir. 1969).

ery, 393 U.S. 483, 485, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), and the necessity that it provide an "efficacious remedy" for intolerable restraints, Fay v. Noia, 372 U.S. 391, 401, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963), the Supreme Court has cautioned and commanded that ". . . there is no higher duty than to maintain it unimpaired". Bowen v. Johnston, 306 U.S. 19, 26, 59 S.Ct. 442, 446, 83 L.Ed. 455 (1939).

█ In order that the writ not be impaired the Court has emphasized its scope and flexibility and, therefore, the requirement that ". . . it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected". Harris v. Nelson, 394 U.S. 286, 291, 89 S.Ct. 1082 (1969). In providing against that which would occasion the effectiveness of the writ being lost in a "procedural morass", Price v. Johnston, 334 U.S. 266, 269, 68 S.Ct. 1049 (1948), Mr. Justice Black wrote for the Court that the writ of habeas corpus

> . . . is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty.

Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963); see also Johnson v. Avery, 393 U.S. 483 at 485, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); Price v. Johnston, 334 U.S. 266 at 283, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948).

█ This Court concludes and holds that in a case such as this it would constitute an unjustifiable impairment of the writ to rule unqualifiedly that a petition for a writ of habeas corpus could not procedurally proceed in a manner analogous to that method set out in Rule 23. It is indeed clear in this case that, in view of the functionally illiter-ate and practically counselless position of the petitioners, it would have constituted an effective denial of an opportunity for habeas corpus relief for this Court to have ruled adversely to petitioners' motion to proceed as a class in accordance with Rule 23. Both "law" and "justice" have required what this Court has done. See Peyton v. Rowe, 391 U.S. 54 at 66–67, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); cf. Harris v. Nelson, 394 U.S. 286, 294, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969).

b. 28 U.S.C. § 1651(a)

28 U.S.C. § 1651(a) provides that

> [t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

This Court concludes that under this statute alone Rule 23 may, when appropriate, be applied by analogy to a petition for writ of habeas corpus.

In this case the Court has found that all the prerequisites to a class action have been met as required by Rule 23(a) and that

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to any other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3); see note 1 supra. Therefore, it is a fortiori self evident that the Court in this case has considered and found it to be appropriate, and hence in aid of its habeas corpus jurisdiction, that a writ issue allowing the petitioners to proceed in accordance with the provisions of Rule 23.

In Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948) the Court held that the purpose and function of the All Writs Act (28 U.S.C. § 1651) is to supply the courts with the instruments needed to perform their duty, pro-

vided only that such instruments are agreeable to the usages and principles of law. *See* Harris v. Nelson, 394 U.S. 286 at 299–300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969). Mr. Justice Murphy in the *Price* case, however, expressly considered and rejected the notion that the term "law" encompassed a static concept. He wrote that

> [s]ection 262 (28 U.S.C. § 1651(a)) says that the writ must be agreeable to the usages and principles of "law," a term which is unlimited by the common law or the English law. And since "law" is not a static concept, but expands and develops as new problems arise, we do not believe that the forms of the habeas corpus writ authorized by § 262 are only those recognized in this country in 1789, when the original Judiciary Act containing the substance of this section came into existence. In short, we do not read § 262 as an ossification of the practice and procedure of more than a century and a half ago. Rather it is a legislatively approved source of procedural instruments designed to achieve "the rational ends of law". Adams v. United States, supra (317 U.S. 269, 273, 63 S.Ct. 236, 87 L.Ed. 268).

Price v. Johnston, 334 U.S. 266, 282, 68 S.Ct. 1049, 1058 (1948). This Court concludes that it would be irrational to reject doctrinally the analogous usage of Rule 23 in habeas corpus and, concurrently, concludes that it may be, and has been in this case, rational and towards the ends of the law and justice to allow a petition for writ of habeas corpus to proceed analogously to Rule 23. As Mr. Chief Justice Marshall has written: " . . . for if the means be not in existence, the privilege (of the writ of habeas corpus) itself would be lost. . . ." Ex parte Bollman, 8 U.S. (4 Cranch) 75, 95 (1807).

## II. THE FEDERAL RULES PER SE

■ Traditionally, the writ of habeas corpus has been understood to be of a civil, and not of a criminal, nature. *See, e. g.,* Farnsworth v. Montana, 129 U.S. 104, 113, 9 S.Ct. 253, 32 L.Ed. 616 (1889); Cross v. Burke, 146 U.S. 82, 88, 13 S.Ct. 22, 36 L.Ed. 896 (1892); Fisher v. Baker, 203 U.S. 174, 181, 27 S.Ct. 135, 51 L.Ed. 142 (1906). The supporting rational is that

> (a) writ of *habeas corpus*, sued out by one arrested for crime, is a civil suit or proceeding, brought by him to assert the civil right of personal liberty, against those who are holding him in custody as a criminal.

Kurtz v. Moffitt, 115 U.S. 487, 494, 6 S. Ct. 148, 149, 29 L.Ed. 458 (1885); *see also* Ex parte Tom Tong, 108 U.S. 556, 559, 2 S.Ct. 871, 27 L.Ed. 826 (1883). And, "[i]t is a legal, not an equitable, remedy". Hunter v. Thomas, 173 F.2d 810, 812 (10th Cir. 1949).

In consideration of this historic understanding and, apparently, with a cursory study of Rules 1, 2 and 81(a)(2), more than one court has plainly held that habeas corpus is " . . . governed by the Federal Rules of Civil Procedure". Bowdidge v. Lehman, 252 F.2d 366, 368 (6th Cir. 1958); *see also* Lyles v. Beto, 32 F.R.D. 248 (S.D.Tex.1963) (Ingraham, J.). The Bowdidge case was cited and quoted with approval by the Fifth Circuit in United States ex rel. Seals v. Wiman, 304 F.2d 53 at 64 (5th Cir. 1962), wherein the court succinctly stated that this rule " . . . is nonetheless well settled. . . ." Therefore, it is the law in this Circuit that a petition for writ of habeas corpus may proceed, upon an appropriate judicial determination (*see* Fed.R.Civ.P. 23(c)(1)), in accordance with Rule 23.

However, the Supreme Court has more recently noted that, although habeas corpus is of a "civil" nature, " . . . the label is gross and inexact". Harris v. Nelson, 394 U.S. 286, 293–294, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969). The Court thereinafter delineated the proceeding as "unique" and in a footnote stated that the "civil" characterization excessively

simplified the complex history of the writ. Harris v. Nelson, *supra*, at 294 and at 294 n. 4, 89 S.Ct. at 1087. Subsequently, the Court again noted that

[t]hough habeas corpus is technically "civil", it is not automatically subject to all the rules governing ordinary civil actions.

Schlanger v. Seamons, 401 U.S. 487, 490 n. 4, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971).

Rule 81(a)(2) of the Federal Rules of Civil Procedure provides in pertinent part that

[t]hese rules are applicable to . . . habeas corpus . . . to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions.

Thus, in spite of the admonition of Rule 2 that "[t]here shall be one form of action to be known as 'civil action' ", Rule 81(a)(2) serves as a limitation on the applicability of the Rules. *See also* Fed.R.Civ.P. 1.

Rule 81(a)(2) provides for a two-part test: first, the practice must not be set forth in the statutes of the United States and, second, the practice must have heretofore conformed to the practice in civil actions.

With regard to the first requirement, it is evident that the statutes regarding habeas corpus do not set forth a procedure with regard to multi-party practice. *See* 28 U.S.C. § 2241 et seq. It is of no consequence, in the opinion of this Court, that the presently applicable statutes utilize the singular when referring to the applicant-prisoner, for early federal habeas corpus acts incorporated the terms "person or persons", "prisoner or prisoners" and "his or their writ". Act of August 29, 1842, ch. 257, 5 Stat. 539; Act of March 2, 1833, ch. 57, § 7, 4 Stat. 634. When several of the earlier habeas corpus acts were consolidated for codification in 1873, the change to the singular was effected. *See* R.S. §§ 753–66, tit. XIII, ch. 13 (1873–74). When coupled with 1 U.S.C. § 1, which provides in part that

[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise——words importing the singular include and apply to several persons, parties, or things . .,

and with the fact that many writs have been considered upon joint petitions by prisoners convicted at a joint trial (*see, e. g.,* United States ex rel. Poret v. Sigler, 361 U.S. 375, 80 S.Ct. 404, 4 L.Ed.2d 380 (1960); Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543 (1923)), this Court is brought squarely to the conclusion that the change of linguistic form from the plural to the singular was merely stylistic and not substantive. Finally, as regards the verification provisions of 28 U.S.C. § 2242, signatures entered on the petition by the named parties to the class, each on behalf of himself and each acting on behalf of those unnamed persons within the common class, would appear to satisfy not only the statute but also the common law doctrine providing against the application for the writ by a mere interloper. *See* In re Ferrens, 8 F.Cas. 1158, 1159 (no. 4746) (S.D.N.Y.1869); *see generally* Gusman v. Marrero, 180 U.S. 81, 87, 21 S.Ct. 293, 45 L.Ed. 436 (1901); Ex parte Dorr, 44 U.S. (3 How.) 103, 105, 11 L.Ed. 514 (1845).

The second requirement of Rule 81(a)(2) is, as stated, the conformity provision. The Supreme Court has, as to this requirement, determined the intent of the draftsmen of the Rules.

Although there is little direct evidence, relevant to the present problem, of the purpose of the "conformity" provision of Rule 81(a)(2), the concern of the draftsmen, as a general matter, seems to have been to provide for the continuing applicability of the "civil" rules in their new form to those areas of practice in habeas corpus and other enumerated proceedings

in which the "specified" proceedings had theretofore utilized the modes of civil practice.

Harris v. Nelson, 394 U.S. 286, 294, 89 S.Ct. 1082, 1088 (1969).

Long ago Mr. Chief Justice Marshall distinguished between the jurisdictional power of a court of the United States to award the writ and the resort which a federal court may take to the common law in order to settle other habeas corpus problems:

> . . . for the meaning of the term *habeas corpus*, resort may unquestionably be had to the common law; but the power to award the writ by any of the courts of the United States, must be given by written law.

Ex parte Bollman, 8 U.S. (4 Cranch) 75, 93–94 (1807). This Court is of the opinion that it is entirely proper, if not wholly necessary, in a case such as this for a court to allow a petition for writ of habeas corpus to proceed upon an appropriate determination in accordance with Rule 23 of the Federal Rules of Civil Procedure as such a procedure clearly facilitates achieving the rational ends of the law. Thus, this Court in the exercise of its best judgment and in the utilization of its inherent procedural resources has exercised an available mode of civil procedure the usage of which is not dependent upon a particular time frame; for its suitability and usefulness to justice is and has been a constant throughout all time frames even though it may not heretofore have been utilized. In so doing, compliance has been had with the conformity requirement of Rule 81(a)(2). Indeed, not to have done so in this case would have made justice the slave of procedure. It has been appropriately written that " . . . dry formalism should not sterilize procedural resources . . .", Adams v. United States, 317 U.S. 269, 274, 63 S.Ct. 236, 239, 87 L.Ed. 268 (1942), and that . . . the principle has developed that the writ of habeas corpus should be left sufficiently elastic so that a court may,

in the exercise of its proper jurisdiction, deal effectively with any and all forms of illegal restraint". Price v. Johnston, 334 U.S. 266, 283, 68 S.Ct. 1049, 1059, 92 L.Ed. 1356 (1948).

█ Therefore, it is the opinion of this Court that, rather than providing for the definitive exclusion of the direct application of Rule 23 to proceedings on a petition for writ of habeas corpus, Rule 81(a)(2) so embraces the procedural convenience of Rule 23 as to make it directly applicable in proper cases and upon an appropriate judicial determination. In construing Rule 81(a)(2) this Court has attentively heeded the provisions of Rule 1 which, lest it be forgotten, provides that the rules " . . . shall be construed to secure the *just*, speedy, and inexpensive determination of *every* action". (emphasis supplied) *See generally* Brennan v. O'Donnell, 426 F.2d 218 (5th Cir. 1970); Hartley & Parker, Inc. v. Florida Beverage Corp., 348 F.2d 161 (5th Cir. 1965); Lawhorn v. Atlantic Refining Co., 299 F.2d 353 (5th Cir. 1962).

### III. APPROPRIATE CASES

This opinion should not be construed so as to provide for the wholesale, that is to say indiscriminate, usage of the class action procedure in habeas corpus. Indeed, in the experience of this Court, this has been the only clear case in which such a procedural device was preferable and superior. However, in habeas corpus it is practically certain that common questions will exist in a number of cases. But, even in such instances, it would appear equally certain that factual variations will exist as among the several petitioners.

█ In consideration of these factors the only useful test is a balancing test:

> where the common issues are substantially more important than the individual ones, a multiparty proceeding is considered desirable.

Note, Multiparty Federal Habeas Corpus, 81 Harv.L.Rev. 1482, 1488 (1968).

The application of this test is best made in accordance with the provisions of Rule 23(c)(1).

In this case the report prepared by counsel for petitioners, filed herein February 19, 1968, pursuant to the Court order of August 9, 1967, greatly facilitated the determination by the Court. Such a procedure would always be most helpful to the court in terms of providing empirical data upon which the court could best base an informed decision. However, it may sometimes be necessary for the court to enter an appropriate order which allows counsel for petitioners access to those of the purported class. Finally, this data in conjunction with the legal issues raised would aid the court in determining whether the action should appropriately proceed in accordance with Rule 23(b)(1)(A), 23(b)(1)(B), 23(b)(2) or 23(b)(3).

## IV. ADVANTAGES OF THE CLASS DEVICE

■ There are numerous advantages in the usage of the class device in habeas corpus. First, from the point of view of the court, a class action is an efficacious procedure for the convenient, unitary disposition of common claims. This results, obviously, in a substantial saving of time for the court with the concomitant benefits to the class action as well as other pending litigation. In this case there would have been absolutely no meaningful benefit to the Court, to the litigants or to justice had approximately 50 substantially identical petitions been filed with this Court. *See* Memorandum for Petitioners at 30 (petitioners' memorandum of law on questions of joinder, class action and related procedural questions, filed herein May 1, 1967).

Second, multi-party practice in habeas corpus proceedings may make meaning-ful that which otherwise may be only so many words: the availability of a federal forum, and hence of the writ itself, to challenge the constitutionality of convictions. In habeas corpus there is no constitutionally protected or guaranteed right to counsel. In the experience and observation of this Court it is only in a very few habeas cases that counsel is, as a matter of discretion, appointed by the court; and only in fewer cases is counsel retained. This Court of its own knowledge knows of no case in which counsel has been appointed to aid in the preparation of a petition and, as yet, there are no legal services provided for this purpose by the state to those committed to its custody. And, although counsel may have been provided by the state at the trial and appellate levels, it may be that a prisoner is subsequently under the misapprehension that he is yet actively represented, whereas in fact this is not the case. In this very case it was found that

> [t]hey sometimes believe that an attorney is acting for them when he has dropped the case, or that a legal proceeding is pending when it has been disposed of unfavorably to them. Sometimes the circumstances surrounding the question of an inmate's legal representation are themselves as confused as the inmate's appreciation of them.

Petitioners' Report on Prison Interviews at 1–2 (filed herein February 19, 1968). Also, the very fact that a case has been adversely decided through the state appellate process is a factor having a negative impact on an attorney's decision whether to render gratuitous services. Finally, the simple fact that many prisoners are functional illiterates renders them incapable of presenting their claims in a meaningful way.[6] Although

---

6. In preparing the report for the Court, counsel for petitioners caused to be administered to the inmates an I.Q. test: the Revised Beta. Although the individual scores were not announced to the Court, counsel reported that the mean for the group of the 40 men interviewed was 88.35—in the Below Average category.

judges may be constantly amazed at the ingenuity of the lesser number of inmates who with great frequency deluge the various clerks' offices with applications for writs of habeas corpus and with civil rights suits, still it must not be forgotten that it is not all within the inmate population who thus reach even the very threshold of the courts.

However, regardless of the merit of the above considerations, there are still more compelling reasons supporting the view that the class device must be available to courts in appropriate cases. First, in keeping with a fundamental purpose of the writ which is time-honored, habeas corpus seeks to open up access to unknown persons who are prisoners held *incommunicado*. *See* 9 Holdsworth, A History of English Law 108–125 (3d ed. 1944). This function is exemplary of the public character of the writ—a function which, because it serves the interest of freeing persons held unlawfully in deprivation of their rightful liberty, protects not only the individual but, rather, all individual persons who *in toto* constitute society.

It has never been understood that, at common law, authority from a person unlawfully imprisoned or deprived of his liberty was necessary to warrant the issuing of a habeas corpus, to inquire into the cause of his detention. In the case of People v. Mercein, 3

Hill, 399, 407, the supreme court of New York intimate that such authority from the person detained is not ordinarily necessary. In Case of Ashby, 14 How.St.Tr. 814, the house of lords, in England, in 1704, resolved "that every Englishman, who is imprisoned by any authority whatsoever, has an undoubted right, by his agents or friends, to apply for and obtain a writ of habeas corpus, in order to procure his liberty by due course of law". This resolution was assented to by the house of commons. *Id.* 826.

In re Ferrens, 8 F.Cas. 1158, 1159 (No. 4746) (S.D.N.Y.1869). Even in this very case, it has been represented to the Court that the American Civil Liberties Union of Florida and the N.A.A.C.P. Legal Defense Fund formally made an offer to the Governor and Cabinet of the State of Florida to represent at no cost to the state the "death row" inmates who were not otherwise represented and that the offer was refused. Petition for writ of Habeas Corpus at 5 (filed herein April 3, 1967); Memorandum for Petitioners at 20 (filed herein May 1, 1967).

Second, it is not only a historical fact but also an occurrence inherent in the concept of the writ that habeas corpus plays a central role in national crises. It is no accident that habeas corpus has time and again played a central role in national crises, wherein the

---

This is but one of a number of *indicia* which affirmatively demonstrate the dedication and ability which accompanied counsel for petitioners.

Paragraph 4 of the petition filed herein provides in part:

(s)hould the Supreme Court of Florida affirm the conviction and sentence of death, such persons become immediately eligible for execution in the electric chair. None of your petitioners are attorneys at law. None of your petitioners can adequately prepare petitions for certiorari from the Supreme Court of the United States to the Supreme Court of Florida. None of your petitioners can adequately prepare a petition pursuant to Rule 1 of the Florida

Rules of Criminal Procedure. None of your petitioners can adequately prepare appeals from adverse rulings. None of your petitioners can adequately present petitions for habeas corpus on their own behalves. Such documents as your petitioners can prepare by themselves cannot conceivably encompass and bring to the attention of reviewing courts all bona fide legal errors and constitutional questions involving their trials and sentences to death. Because of their poverty your petitioners are unable to retain counsel to prepare these documents for them and to exhaust the State and Federal judicial remedies which uncover error and save their lives.

claims of order and of liberty clash most acutely, not only in England in the seventeenth century, but also in America from our very beginnings, and today.

Fay v. Noia, 372 U.S. 391, 401, 83 S.Ct. 822, 828, 9 L.Ed.2d 837 (1963).[7] Thus, the writ is a judicial vehicle which may bring to the courts for resolution the most far reaching issues of the day. Such clashes may certainly involve large numbers of persons who have a common interest in a unitary issue which might vindicate their right to liberty and which may, therefore, make "prompt decision . . . desirable. . . ." Frisbie v. Collins, 342 U.S. 519, 520, 72 S.Ct. 509, 96 L.Ed. 541 (1952). In such a case "[t]he public, as well as the individual, are interested in a speedy settlement of this matter". Ex parte Kieffer, 40 F. 399, 401 (C.C.D.Kan.1889). If a class device be not available in such circumstances, then, as a result of what may be very real limitations of judicial resources, the efficacy of the purpose of protecting valid claims to freedom, which the writ seeks to guarantee, may be truly emasculated. In short, procedure must serve, not thwart, the interest of the law in protecting rightful liberty.

Therefore, it is

Ordered:

 This petition for writ of habeas corpus is hereby dismissed as moot since the relief sought has been granted.

## ON MOTION FOR CLARIFICATION

### ORDER

This Court has received a "Motion for Clarification . . . and/or Request for 'Certificate of Probable Cause for Appeal' . . .", filed herein November 27, 1972, in the name of Raymond Robert Corriea. However, upon a perusal of this *pro se* writing, it appears that the inmate who prepared the writ, *i. e.*, Robert Ryan, may have a greater interest in the pleading than Corriea.

The pleading, *sub judice*, is a specious work which, under the cloak of a "motion for clarification", seeks to attack the legality of the various and respective convictions of the petitioners herein and, perhaps, the conviction of Mr. Ryan.

 In this case all of the untold, numerous issues which might be raised to challenge the legality of the various and respective convictions have never been, nor are they now, before this Court in this case. The only issues which were ever properly before this Court in this case were those issues relating to the various and respective sentences of death. The class in this case only included those inmates subject to a sentence of death and those only to the extent that the death sentences themselves were alleged to be unconstitutional.

In short, any issues relating to the convictions of the petitioners herein are not and have not been before this Court in this case. Any such issues should properly be presented to the Court by the filing by the inmate seeking relief of a petition for writ of habeas corpus in accordance with the regular and statutory procedure set out in 28 U.S.C. § 2241 et seq. Of course, this Court expresses no opinion as to any possible disposition of any such case.

Therefore, it is

Ordered:

1. Raymond Robert Corriea's motion for clarification, filed herein November 27, 1972, is denied except to the extent that hereinabove the subject opinion is clarified.

---

7. *See* Fay v. Noia, 372 U.S. 391 at 401 n. 9, 403, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) (cases therein cited) ; Petitioners' Memorandum at 33 (petitioners' memorandum of law on questions of joinder, class action and related procedural questions, filed herein May 1, 1967) (cases therein discussed).

2. Raymond Robert Corriea's motion for certificate of probable cause, filed herein November 27, 1972, is denied for the reasons hereinabove set out and for the reasons set out in this Court's order, filed herein November 13, 1972.